**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MJCM, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0664 |
| | § | |
| SKY BANK, f/k/a METROPOLITAN | § | |
| BANK & TRUST CO., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This case arises out of a contract to provide banking services.  MCJM L.L.C. d/b/a Pinnacle Financial Strategies ("Pinnacle") sued Sky Bank f/k/a Metropolitan Bank & Trust Co. ("MB&T") in state court.  Sky Bank removed on the basis of diversity jurisdiction, then moved to dismiss under Rule 12(b)(2), claiming that this court lacks personal jurisdiction. (Docket Entry No. 1.)  Pinnacle responded, Sky Bank replied, and Pinnacle filed a surreply. (Docket Entry Nos. 7, 16, 17.)  Based on the motion, the parties' submissions, and the applicable law, this court denies Sky Bank's motion to dismiss.  The reasons are stated below.

## I.      Background

Pinnacle is a limited liability company headquartered in Houston, Texas.  It develops and provides services, programs, and products to banks.  One of its offerings is an "overdraft privilege program," which enables banks to allow depositors to pay a fee and overdraw their

accounts without bouncing checks.  Pinnacle's overdraft program includes an analysis of the banks deposits and practices, the installation of a proprietary software system on the bank's computer system; the training of the bank's employees in the program and software; and the provision of technical support and other support.

On December 18, 2001, Pinnacle entered into three agreements to provide the overdraft privilege program at MB&T, a wholly-owned subsidiary of Metropolitan Financial Corp.  (Docket Entry No. 1, ¶ 28.)  Those agreements included the "Professional Services Agreement," which required Pinnacle to provide MB&T services related to implementing and operating Pinnacle's overdraft program for sixty months.  Pinnacle and MB&T also executed a "Software Licensing Agreement," which licensed MB&T to use Pinnacle's proprietary and confidential software to operate the Pinnacle overdraft program.  Finally, Pinnacle and MB&T entered a "Marketing Materials License Agreement," which granted MB&T licenses to use specific trademarks, service marks, and copyrighted marketing materials in advertising MB&T's use of Pinnacle's overdraft program and services.  (*Id.* ¶¶ 13–15.)  These three agreements allegedly obligated MB&T not to disclose Pinnacle's confidential or proprietary information or software and not to use Pinnacle's marketing materials in a manner inconsistent with Pinnacle's ownership.  (*Id.* ¶¶ 20–24.)

On April 30, 2003, MB&T's parent company, Metropolitan Financial Corp., merged "with and into" Sky Financial Group, Inc.  Before this merger, Sky Bank was an Ohio-chartered bank and a wholly-owned subsidiary of Sky Financial Group, Inc.  On March 5, 2003, MB&T told Pinnacle in a letter that pursuant to Metropolitan Financial Group's merger

with Sky Financial Group, Inc., MB&T would merge with Sky Bank.  (Docket Entry No. 1, ¶¶ 30.)  Pinnacle's professional services agreement with MB&T terminated if there was a "change of control in ownership."  (*Id.* ¶ 31.)  MB&T asserted that the merger would trigger a termination of the professional services agreement.  (*Id.* ¶ 32.)

MB&T merged into Sky Bank on May 16, 2003, with Sky Bank as the surviving entity.  (*Id.* ¶ 33.)  Pinnacle alleges in its complaint that "Sky/Metropolitan is the successor to Sky Bank by merger.  At all times relevant to this suit, Sky/Metropolitan or a predecessor through merger has been a wholly owned subsidiary of Sky Financial Group, Inc., or a predecessor through merger."  (*Id.* ¶¶ 34–35.)  "As a consequence" of these changes, "there was no change of control in ownership of MB&T."  (*Id.* ¶ 36.)  Pinnacle alleges that as a result of the merger, Sky Bank was able "to examine and review" the Pinnacle overdraft program without Pinnacle's authorization.  Pinnacle believes that MB&T disclosed confidential and proprietary information and trade secrets relating to Pinnacle's overdraft program before the merger.  Pinnacle alleges that Sky Bank knew about Pinnacle's agreements with MB&T, interfered with the contracts, and continues to use elements of Pinnacle's Program at certain bank branches, including former MB&T branches.  Pinnacle sues for breach of contract, tortious interference with contract, trademark infringement, theft of trade secrets and confidential and proprietary information, unfair competition, conspiracy, and for damages under the Texas Theft Liability Act.  (*Id.* ¶¶ 49–92.)

Sky Bank has moved to dismiss, alleging that this court lacks specific personal jurisdiction because Sky Bank lacks sufficient minimum contacts with Texas.  Pinnacle does

not argue that general jurisdiction is present, but does assert that the requirements of specific jurisdiction are met.

## II.    The Legal Standard for Specific Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.  *See Latshaw v. H.E. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  Texas's long-arm statute extends to the limits of due process.  The question is whether subjecting Sky Bank to suit in Texas is consistent with the Due Process Clause of the Fourteenth Amendment.  *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (*citing Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."  *Latshaw*, 167 F.3d at 211 (*quoting Int' Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S. Ct. 154  (1945)). The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction."  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  Specific jurisdiction exists

when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  *See id.* (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868 (1984)).[1]

To decide specific jurisdiction, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted).  There must be a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987).  Specific jurisdiction is limited to adjudication of the particular controversy that arises out of or is related to the defendant's contacts with the forum.  *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003); *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986).  Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985).  "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, (1980)).

---

[1]     General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic."  *See id.* (*citing Helicopteros*, 466 U.S. at 414 n.9).

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction.  *Qurck Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted).  "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Stuart*, 772 F.2d at 1192.  The plaintiff "need only present a prima facie case for personal jurisdiction; proof by a preponderance of the evidence is not required."  *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985), *quoted in WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).  "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. . . ."  *D.J. Invs.*, 754 F.2d at 546, *quoted in Bullion v. Gilllespie*, 895 F.2d 213, 217 (5th Cir. 1990).

## III.   Analysis

Sky Bank makes two arguments against the exercise of personal jurisdiction by this court.  First, it argues that it has insufficient contacts with the forum state.  Second, it argues that any contacts of MB&T to Texas cannot be imputed to Sky Bank because MB&T no longer exists, having merged into a successor corporate entity.  Each argument is addressed in turn.

### A.    Specific Personal Jurisdiction

Sky Bank is a corporate citizen of Ohio with its principal place of business in Ohio.

Sky Bank argues that it has not engaged in business within Texas, committed any tort in Texas, and does not have any place of business or employees within this state.  Sky Bank submitted the affidavit of John R. Reisner, Sky Bank's assistant secretary, testifying as to Sky Bank's lack of contacts with Texas.  (Docket Entry No. 1, ex. A.)

Pinnacle responds that "Sky/Metropolitan" purposely availed itself of the privilege of doing business in Texas by reaching out beyond Ohio to initiate and implement a continuing contractual relationship with Pinnacle in Texas.  (Docket Entry No. 7, ¶ 4.) Pinnacle asserts that Sky/Metropolitan's contacts are sufficient for this court to exercise specific personal jurisdiction.  This court agrees.

Although it is true that "merely contracting" with another party in the forum state is insufficient to establish minimum contacts, *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004), the agreements between the parties in this case demonstrate far more extensive contacts between MB&T and Texas than executing a contract.   According to the affidavits Pinnacle submitted, the parties' agreements contemplated, and were characterized by, extensive ongoing contacts between MB&T and Pinnacle, in Texas.  (Docket Entry No. 7, exs. A–B.)  Pinnacle submitted the affidavit of Michael Otter, who now works as a client services project manager for Pinnacle, but formerly worked as vice-president of operations for MB&T.  (*Id.* ex . B (Otter Aff.).)  While working for MB&T in Ohio, Otter contacted Pinnacle at its Houston, Texas offices in 2001, seeking to contract with Pinnacle to use its overdraft protection system.  Otter, working on behalf of MB&T, traveled to Texas in December 2001 to execute the contract.  (*Id.* ¶ 5.)

The parties had weekly teleconferences and routinely communicated during the initial stages of the contract.  (*Id.* ¶ 7.)  The contract itself was to last five years and was divided into four stages.   Each stage involved close interaction between MB&T's Ohio-based staff and Pinnacle's Texas-based employees. (*Id.* ex. A ¶¶ 12–16.)  Under the contract terms, MB&T wired-transferred a $15,000 initial payment and then wire-transferred monthly payments to Pinnacle's Texas bank account.  MB&T made its monthly payments without incident for one year.  MB&T also sent monthly worksheets to Pinnacle in Texas to evaluate the Pinnacle program's financial performance.  (*Id.* ¶ 22.)  The parties agreed that Texas law would govern the interpretation of the agreements.

Pinnacle also submitted the affidavit of William Bracken, Pinnacle's chief financial officer.  Bracken testified that much of the work performed under the contract was conducted by Pinnacle's Texas-based employees.  These included Texas-based software engineers providing software programming for MB&T, Texas-based technicians providing technical support for MB&T, and Texas-based employees and marketing staff providing marketing material developed for MB&T.  (*Id.* ex. A (Bracken Aff.) ¶ 7.)

Sky Bank points out, correctly, that several of these Texas contacts, standing alone, would be insufficient for specific personal jurisdiction.  Sky Bank cites *Freudensprung* to support its argument that contracting with a Texas-based corporation is not sufficient to support the exercise of jurisdiction.  In *Freudensprung*, however, the injured plaintiff sued in tort and sought to exercise jurisdiction over a foreign defendant based on an agreement between that foreign defendant and a Texas defendant who employed the plaintiff.  *See* 379

F.3d at 344 ("At the outset, we note that Freudensprung is not a party to the contract [with

a Texas defendant]."). "Thus, strictly speaking, the . . . litigation d[id] not 'arise out of or

relate[] to' WWAI's contacts with Texas." *Id.* (*citing Coats v. Penrod Drilling Corp.*, 5 F.3d

887, 884 (5th Cir. 1993)). Similarly, simply sending payments to the forum state, even as

part of a contractual relationship, is not, in and of itself, sufficient to support the exercise of

specific personal jurisdiction. *See, e.g.*, *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778

(5th Cir. 1986) (defendant sent three checks in partial performance of contractual

obligations). It is the combination and extent of MB&T's contract-related contacts that

supports exercising specific personal jurisdiction in this case.

As part of the minimum contacts analysis, this court evaluates any contracts, the

parties' "actual course of dealing," and the parties' "prior negotiations and contemplated

future consequences." *Burger King*, 471 U.S. at 479. The professional services agreement

signed by the parties indicates that Texas law governs, "without giving effect to any choice

of law principles." (Docket Entry No. 7, ex. A(1) § 9.) Although this is a choice-of-law

clause and not a forum selection clause, such provisions "warrant some weight in considering

whether a defendant has purposefully invoked the benefits and protection of a state's laws

for jurisdictional purposes." *Stuart*, 772 F.2d at 1195; *see also Burger King*, 471 U.S. at

481–82 (distinguishing a choice of law analysis from a minimum contacts analysis, and

noting that selecting the law of a specific state "reinforced [defendant's] deliberate affiliation

with the forum State and the reasonable foreseeability of possible litigation there"). In

*Stuart*, the parties' choice-of-law provision specified that the agreement would be governed

9

by the law of the state in which the "aggrieved party" resided. 772 F.2d at 1195. MB&T's decision to enter a long-term contract with a Texas business entity and agreement that Texas law would govern that contract, although not dispositive, weighs in favor of finding minimum contacts.

Most significantly, the parties' agreements anticipated extensive future dealings between Pinnacle, a Texas-based business, and MB&T. While MB&T operated only in Ohio and contracted to have Pinnacle implement its overdraft protection system at MB&T's Ohio facilities, the agreements embody much more than simply installing software. Pinnacle — which must make a *prima facie* showing — has submitted affidavits showing that the parties entered into a long-term agreement requiring extensive interaction between the two companies. Pinnacle provided a baseline analysis before implementing its Program. Pinnacle then evaluated MB&T's accounting, customer account agreements, procedures, and related data processing systems before making a recommendation on how to configure its overdraft system. After implementing the program, Pinnacle monitored the system's performance and provided quarterly analyses and recommendations concerning MB&T's use of Pinnacle's systems. (Docket Entry No. 7, ex. A, ¶¶ 13–16.) All of these services required the work of Pinnacle's Texas-based employees, who performed their work in Texas.

Sky Bank argues that because the contracts specify Ohio as the location of bank branches where the computer software would be installed and did not require that any meetings take place in Texas, minimum contacts did not exist. However, Sky Bank has not disputed that MB&T sought out a Texas company and entered into contracts that required

ongoing work to be performed in Texas as well as in Ohio. The combination of these anticipated, long-term contacts, along with the contract's choice-of-law clause, demonstrate sufficient minimum contacts for this Texas court to exercise specific personal jurisdiction over disputes arising out of the parties' agreements.

### B.    Imputing the Contacts of the Predecessor

For the first time in its reply, Sky Bank raises the question whether this court may consider MB&T contacts to Texas because MB&T merged with Sky Bank and no longer exists as a corporate entity. (Docket Entry No. 16.) Sky Bank contends that this court may not exercise personal jurisdiction over it "based solely upon the contacts of the forum state of another corporate entity with which the defendant may be affiliated." (*Id.* at 11.) Sky Bank cites *Freudensprung*, 379 F.3d at 346, and *Access Telecom Inc. v. MCI Telecom, Inc.*, 197 F.3d 694, 717 (5th Cir. 1999), to support this claim. Neither case is apposite.

In *Freudensprung*, the court declined to exercise general personal jurisdiction over a defendant Panamanian corporate entity based on the contacts of its corporate parent in Texas. 379 F.3d at 346. The plaintiff in *Freudensprung* failed to produce any evidence to overcome the presumption of corporate separateness enjoyed by business entities. *Id.* By contrast, here Pinnacle asserts specific personal jurisdiction over a company that, after signing the contracts from which the dispute arose, merged into another entity and ceased to exist. No separate parent-subsidiary relationships persists that Pinnacle must breach.

*Access Telecom* also involved the exercise of general personal jurisdiction. The court in that case noted that "typically, the corporate independence of companies defeats the

assertion of jurisdiction over one by using contacts with the other."  197 F.3d at 717, *citing Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes.").  *Hargrave*, 710 F.2d at 1159.  No similar independent relationship is at issue here.  Imputing the jurisdictional contacts of a corporate subsidiary to the parent requires a showing of control by the parent over the internal affairs of the subsidiary.  The facts of this case meet that standard.  MB&T no longer exists as a corporate entity.  It merged into a successor entity, Sky Bank.  The Fifth Circuit has counseled imputation of jurisdictional contacts of a predecessor corporation to its successor corporation, and has noted that "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."  *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 652 (5th Cir. 2002).  Moreover, Ohio law supports such an approach here.  *See* OHIO REV. CODE ANN. § 1701.82(A)(4) (West 2005) (indicating that when Ohio corporations merge, the "surviving or new entity is liable for all the obligations of each constituent entity"); *Duris v. Erato Shipping, Inc.*, 684 F.2d 352, 356 (6th Cir. 1982) ("Any other ruling would allow corporations to immunize themselves [from liability] by formalistically changing their titles."), *aff'd sub nom. Pallas Shipping Agency Ltd. v. Duris*,

461 U.S. 529, 103 S. Ct. 1991, (1983); *see also Patin*, 294 F.3d at 654 (*citing Duris*).[2]

## III.  Conclusion

Defendant Sky Bank's motion to dismiss is denied.

SIGNED on August 31, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[2]  This court does not reach Pinnacle's alternative argument that Sky Bank has consented to personal jurisdiction in Texas by making a special appearance in state court.  Tex. R. Civ. P. 120(a) permits a "defendant" to object to jurisdiction because "such party" is not amenable to process issued by Texas courts. TEX. R. CIV. P. 120(a).  Pinnacle asserts that if Sky Bank and MB&T have separate jurisdictional personae, then the Texas rules permit MB&T, but not Sky Bank, to appear specially.  According to Pinnacle, Sky Bank's failed attempt to appear specially waived its personal jurisdiction objections.